UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

TONY SCOTT,

    Plaintiff,

v.   06-3144

DR. LOWELL BROWN et al.,

    Defendants.

## Order

    This case is about Plaintiff's treatment for coronary artery disease during his incarceration in Western Illinois Correctional Center. Plaintiff has settled the case with the defendants who are medical professionals. The motion for summary judgment by the non-medical defendants is before the court. There is no evidence to support an inference that these defendants were deliberately indifferent to Plaintiff's serious medical needs. Accordingly, summary judgment is mandated for them.

### Summary Judgment Standard

    Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 17, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Material factual disputes are resolved in the plaintiff's favor.

### Undisputed Facts

    These facts are adopted largely verbatim from Defendants' motion for summary judgment, to the extent not put in material dispute by Plaintiff. The cites are to the attachments to Defendants' memorandum (d/e 60).

    1. Plaintiff Tony Scott arrived at Western Correctional Center in March of 2005. (Deposition of Tony Scott ("Plaintiff's Dep."), attached hereto as Exhibit A, at pp. 26-27).

1

2. Plaintiff suffers from coronary artery disease. (Plaintiff's Complaint, generally.)

3. Plaintiff's coronary artery disease was treated by Dr. Lowell Brown at Western Illinois Correctional Center. (Plaintiff's Dep. at p. 36).

4. Plaintiff testified that his medical care at Western was satisfactory until June of 2005 when some of his prescriptions were discontinued and/or changed by Dr. Brown. (Plaintiff's Dep. at p. 38).

5. Plaintiff testified that Dr. Brown discontinued his Plavix, Zocor, Isosorbide, and Nitro prescriptions in June of 2005. (Plaintiff's Dep. at p. 38).

6. Plaintiff alleges that Defendants Fuqua, Polk, Walker, and Zimmerman turned a blind eye to the fact that Plaintiff's prescriptions were discontinued. (Plaintiff's Complaint, generally).

7. Defendant Deborah Fuqua is the Health Care Unit Administrator ("HCUA") at Western Correctional Center. (Plaintiff's Dep. at p. 98).

8. Defendant Fuqua never treated Plaintiff, but did provide responses to his grievances about medical care. (Plaintiff's Dep. at pp. 98-99).

9. Plaintiff testified that he addressed his concerns about prescriptions to Defendant Fuqua's attention but that she just went along with what Dr. Brown was doing. (Plaintiff's Dep. at p. 100).

10. As HCUA, Defendant Fuqua was responsible for managing and directing the daily operations of the Health Care Unit, coordinating and implementing policies and procedures, and carrying out other administrative duties. Providing medical care and treatment to inmates and supervising the medical care being provided were not among her official duties. (See CMS Position Description for HCUA, Response to Plaintiff's Interrogatories #1, attached hereto as Exhibit G).

11. Defendant Polk was the Warden at Western Correctional Center from October 16, 2004 to December 15, 2005. (Affidavit of Terry Polk ("Polk Affidavit"), attached hereto as Exhibit B).

12. Plaintiff and his wife addressed their concerns about Plaintiff's prescriptions to Defendant Polk, who responded by advising Plaintiff to use the grievance procedure. (Plaintiff's Dep. at p. 94; Polk Affidavit, Exhibit B).

13. Defendant Zimmerman has been the Warden of Western Illinois Correctional Center since February 1, 2006. (Affidavit of Roger Zimmerman ("Zimmerman Affidavit"), attached hereto as Exhibit C).

14. Prior to becoming Warden, Defendant Zimmerman also served as Assistant Warden at Western Correctional Center during the time Plaintiff was incarcerated there. (Plaintiff's Dep. at p. 93).

15. Plaintiff also addressed his concerns about his prescriptions to Defendant Zimmerman, who responded that he was not a doctor and told Plaintiff to go to the Health Care Unit. (Plaintiff's Dep. at p. 96).

16. Neither Defendant Polk nor Defendant Zimmerman are doctors. (Plaintiff's Dep. at p. 97).

17. Neither Defendant Polk nor Defendant Zimmerman are trained or qualified to provide medical treatment or prescribe medication. (Polk Affidavit, Exhibit B; Zimmerman Affidavit, Exhibit C).

18. Defendant Walker is the Director of the Department of Corrections. (Plaintiff's Dep. at p. 97).

19. Defendant Hendricks was formerly employed as a Correctional Officer at Western Correctional Center. (Affidavit of Karolyn Hendricks ("Hendricks Affidavit"), attached hereto as Exhibit D).

20. Defendant Hendricks never treated Plaintiff. (Hendricks Affidavit, Exhibit D).

21. Plaintiff's only complaint with Defendant Hendricks is that she kept walking away from his cell and did not call for help after he informed her that he was having chest pains and did not have any Nitro pills on August 10, 2005. Plaintiff testified that Defendant Hendricks was present on the wing because she was collecting trash. (Plaintiff's Dep. at pp. 102-107).

22. Plaintiff alleges that Defendant Hendricks stated that Plaintiff must not need Nitro pills if he didn't have any more. (Plaintiff's Dep. at p. 103).

23. Defendant Hendricks does not recall encountering Plaintiff or speaking to him about his Nitro pills on August 10, 2005. (Hendricks Affidavit, Exhibit D).

24. Defendant Hendricks would have contacted a Lieutenant, Captain, or staff at the Health Care Unit had she observed Plaintiff to be having a medical emergency or in need of medical attention. (Hendricks Affidavit, Exhibit D).

25. When an offender is having a medical emergency there is a button in his cell that he can push for assistance. (Plaintiff's Dep. at p. 105).

26. The officer on duty in the wing is supposed to respond when an offender pushes the emergency button. (Plaintiff's Dep. at p. 107).  Plaintiff maintains that he pushed the button after

3

Hendricks ignored his pleas, but that no one answered.

27. Defendant Hendricks was not the officer on duty in Plaintiff's gallery on August 10, 2005. (Plaintiff's Dep. at p. 107).

28. Plaintiff testified that he suffered chest pain all through the night on August 10, 2005, but that it was mostly gone the next day. (Plaintiff's Dep. at p. 109).

29. Plaintiff was next seen in the Health Care Unit on August 22, 2005. (Plaintiff's Dep. at p. 109).

30. Plaintiff's medical records from August of 2005 indicate that Plaintiff suffered no harm or injury as a result of the chest pains he experienced on August 10, 2005.

31. Plaintiff testified that he experienced fatigue, numbness on his right side, chest pains, and tingling in his left finger tips during the period of time that his preferred medications were discontinued. (Plaintiff's Dep. at p. 118).

32. Plaintiff testified that his prescriptions for Plavix, Isosorbide, Zocor, and Nitro pills have been reinstated but that he still experiences fatigue, numbness on his right side, and chest pains on and off to this day. (Plaintiff's Dep. at pp. 118-19).

33. Plaintiff settled this case against Defendants Dr. Brown and Nurse O'Conner in July 2007. Consequently, Dr. Brown and Nurse O'Conner were dismissed from the case (d/e 63).

34. Plaintiff was released from IDOC custody in May 2007. (d/e 48).

**Analysis**

Plaintiff settled this case as to Defendants Dr. Brown and Nurse O'Conner in July 2007. The remaining defendants are not medical professionals. The did not have the knowledge or authority to make prescription decisions for Plaintiff's heart condition. Dr. Brown did, and Plaintiff has settled with him. The record shows that Dr. Brown was making the treatment decisions and there is no evidence that a layperson would have had any reason to believe that Dr. Brown's decisions were obviously inadequate." *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill 2002)(noting that, "except in [that] unusual case, prison officials may reasonably rely on the judgment of medical professionals.")(other citations omitted), *cited with approval by Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006). The non-medical defendants did not ignore Plaintiff, they simply adhered to Dr. Brown's treatment decisions. Plaintiff's disagreement with those decisions is not evidence of deliberate indifference. It is clear that Plaintiff's claim is really against Dr. Brown, who is no longer in the case.

Separate discussion is warranted regarding Defendant Hendricks. Plaintiff alleges that Hendricks was picking up trash on August 10, 2005, when Plaintiff told her that he was having

chest pains and needed his Nitro. Plaintiff alleges that Hendricks walked away, replying that he must not need Nitro if he did not already have it. Hendricks does not recall any such incident and avers that she would have contacted the officer on duty if an inmate was in distress. The court accepts Plaintiff's version as true for purposes of summary judgment, but that version does not support a deliberate indifference claim against Hendricks. Plaintiff does not dispute that Hendricks was picking up trash, was not the officer on call that evening, and that a button existed in his cell to summon that officer. Plaintiff avers that he did push the button, but no one came. Hendricks, however, cannot be held responsible for the failure of the officer on duty. Further, Plaintiff's allegations are too vague to give rise to an inference that Hendricks knew, solely from Plaintiff's own description to her, that he was suffering from a serious medical need that needed immediate attention. Plaintiff's sole encounter with Hendricks was too brief to warrant an inference of deliberate indifference against her. [1] Plaintiff states that he wound up in the hospital because of Hendricks but the court found nothing in the record to support that assertion.

    IT IS THEREFORE ORDERED:

    1) Defendants' motion for summary judgment is granted (d/e 59). The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.

    2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.

Enter this 25th day of February 2008.

                                      **s\Harold A. Baker**

                                      _____
                                        Harold A. Baker
                                     United States District Judge

---

[1] Plaintiff states that he wound up in the hospital because of Hendricks but the court found nothing in the record to support that assertion. Plaintiff also states that he is still not being treated correctly by Dr. Brown, but Plaintiff is no longer incarcerated, according to the record.